UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION at LONDON

CIVIL ACTION NO. 10-290-GWU

JOHN W.M. HOSKINS, PLAINTIFF,

VS. **MEMORANDUM OPINION**

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY, DEFENDANT.

## INTRODUCTION

John Hoskins brought this action to obtain judicial review of an unfavorable administrative decision on his application for Supplemental Security Income. The case is before the court on cross-motions for summary judgment.

## APPLICABLE LAW

The Commissioner is required to follow a five-step sequential evaluation process in assessing whether a claimant is disabled.

1. Is the claimant currently engaged in substantial gainful activity? If so, the claimant is not disabled and the claim is denied.

2. If the claimant is not currently engaged in substantial gainful activity, does he have any "severe" impairment or combination of impairments--i.e., any impairments significantly limiting his physical or mental ability to do basic work activities? If not, a finding of non-disability is made and the claim is denied.

3. The third step requires the Commissioner to determine whether the claimant's severe impairment(s) or combination of impairments meets or equals in severity an impairment listed

1

    in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (the Listing of Impairments).  If so, disability is conclusively presumed and benefits are awarded.

 4. At the fourth step the Commissioner must determine whether the claimant retains the residual functional capacity to perform the physical and mental demands of his past relevant work.  If so, the claimant is not disabled and the claim is denied.  If the plaintiff carries this burden, a prima facie case of disability is established.

 5. If the plaintiff has carried his burden of proof through the first four steps, at the fifth step the burden shifts to the Commissioner to show that the claimant can perform any other substantial gainful activity which exists in the national economy, considering his residual functional capacity, age, education, and past work experience.

20 C.F.R. §§ 404.1520; 416.920; Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984); Walters v. Commissioner of Social Security, 127 F.3d 525, 531 (6th Cir. 1997).

  Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence.  Jones v. Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991).  This "substantial evidence" is "such evidence as a reasonable mind shall accept as adequate to support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight.  Garner, 745 F.2d at 387.

In reviewing the record, the court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups. Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987). Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

Step four refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987). The plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983). However, both 20 C.F.R. § 416.965(a) and 20 C.F.R. § 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all. Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case. Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform,

then an award of benefits may, under certain circumstances, be had. E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994). One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities. 20 C.F.R. § 404.1567(b). "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing. 20 C.F.R. § 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental

contaminants . . . rote application of the grid [guidelines] is inappropriate . . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990). If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid. Id. In such cases, the agency may be required to consult a vocational specialist. Damron v. Secretary, 778 F.2d 279, 282 (6th Cir. 1985). Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's physical and mental impairments. Varley v. Secretary of Health and Human Services, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

The Administrative Law Judge (ALJ) concluded that Hoskins, a 25-year-old man with a "limited" education and no past relevant work history, suffered from impairments related to a left shoulder injury, being status post motorcycle accident with two broken arms, decreased lumbar flexion, kidney problems (only one functioning) and depression/anxiety. (Tr. 12, 17). Despite the plaintiff's impairments, the ALJ determined that he retained the residual functional capacity to perform a restricted range of light level work. (Tr. 14). Since the available work

5

was found to constitute a significant number of jobs in the national economy, the claimant could not be considered totally disabled. (Tr. 18). The ALJ based this decision, in part, upon the testimony of a vocational expert. (Id.).

After review of the evidence presented, the undersigned concludes that the administrative decision is supported by substantial evidence. Therefore, the court must grant the defendant's summary judgment motion and deny that of the plaintiff.

Ralph Crystal testified at the second administrative hearing as a vocational expert. Crystal noted that Hoskins had no past relevant work. (Tr. 29). The witness indicated that higher stress level, unskilled work at the light and sedentary exertional levels would require involvement with the general public, co-workers and supervisors for simple exchange of information with the jobs often requiring one to work outside. (Id.). Lower stress jobs at these exertional levels would not have such requirements. (Tr. 30). The hypothetical question presented to Crystal proposed a person of the plaintiff's age, education and lack of work background, limited to light level work restricted from a full range by (1) an inability to repetitively use the left arm in fulfilling job responsibilities; (2) an inability to ever perform overhead work with the left arm or hand; (3) a limitation to simple, routine job tasks requiring only simple-type job instructions; and (4) a limitation to low stress, unskilled work as previously defined. (Id.). In response, the expert identified a significant number of jobs which could still be performed. (Tr. 31). Therefore,

assuming that the vocational factors considered by Crystal fairly depicted the claimant's condition, then a finding of disabled status, within the meaning of the Social Security Act, is precluded.

With regard to the framing of the physical restrictions of the hypothetical question, the undersigned finds no error. Dr. Daniel Stewart examined Hoskins and opined that his physical problems would not preclude employment beyond work requiring heavy lifting. (Tr. 430). The ALJ's findings were consistent with this opinion. Dr. James Ramsey reviewed the record and indicated that the plaintiff had no physical limitations. (Tr. 518-525). Such treating and examining sources as the staff at Appalachian Regional Hospital (Tr. 212-215, 327-356), the Johnson City Medical Center (Tr. 216-326), and Mary Breckinridge Healthcare (Tr. 357-401, 530-559), did not identify the existence of more severe physical restrictions than those found by the ALJ. These reports support the administrative denial decision.

Dr. P.D. Patel examined Hoskins and noted an impression of being status post motor vehicle accident with laceration of the kidneys, chronic low back pain, sternal pain, and a history of hepatitis B. (Tr. 582). Dr. Patel indicated that the plaintiff would experience a number of serious limitations including an inability to stand or walk for more than a total of three hours a day, sit for more than a total of four hours a day, an inability to ever twist, an inability to more than occasionally stoop, crouch or climb, and a need to avoid concentrated exposure to temperature

7

extremes, wetness, humidity, noise, and environmental pollutants. (Tr. 573-575). These were more severe limitations than those found by the ALJ. The ALJ considered Dr. Patel's opinion, but found that the objective medical data did not support the existence of such severe limitations. (Tr. 16). Dr. Patel was a one-time examiner whose opinion was offset by that of Dr. Stewart who also examined the claimant and identified far less severe restrictions. (Id.). As noted by the ALJ, Dr. Stewart found full upper extremity motor strength and good grip strength on physical examination. (Tr. 16, 429). Therefore, the ALJ dealt properly with the evidence of record relating to Hoskins's physical condition.

The ALJ also dealt properly with the evidence of record relating to Hoskins's mental status. Psychologist Jeanne Bennett examined the plaintiff and noted a diagnostic impression of an intermittent explosive disorder. (Tr. 406). Bennett opined that the claimant would be "moderately" limited in such areas as responding to supervision, co-workers and work pressures and tolerating stress. (Tr. 407). The mental factors of the hypothetical question were essentially consistent with all of these restrictions.

Hoskins was treated for his mental problems at the Kentucky River Comprehensive Care Center between February and December of 2008. More severe mental restrictions than those found by the ALJ were not identified by the

Kentucky River staff.  (Tr. 560-572).  Thus, this report provides support for the administrative denial decision.

Hoskins was hospitalized at the Hazard Psychiatric Center in June and July of 2008.  Upon admission, the plaintiff was noted to suffer from opiate dependence and a substance-induced mood disorder.  (Tr. 452).  His Global Assessment of Functioning (GAF) was rated at 30.  (Id.).  Such a GAF suggests an inability to function in almost all areas according to the American Psychiatric Association's Diagnostic and Statistical Manual of Mental Disorders (4th Ed.--Text Revision), p. 34.  However, upon discharge, the claimant's GAF was reported at 60, suggesting the existence of "moderate" psychological symptoms compatible with the ALJ's findings.  (Id.).  Significantly, the Hazard staff did not identify the existence of more severe mental limitations than those found by the ALJ.  (Tr. 447-499).  The court notes that Public Law 104-121 bars a finding of disabled status if drug or alcohol abuse is a "material" factor contributing to the determination of disabled status.  42 U.S.C. § 423(d)(2)(C).  Since any long-term mental problems found by the Hazard staff would relate to substance abuse issues, reliance upon them for a disability finding would be problematic for the claimant.  Therefore, the Hazard report also does not support the plaintiff's disability claim.

Dr. Patel also evaluated Hoskins's mental status and noted an impression of an intermittent explosive disorder, a mood disorder and a history of substance

abuse. (Tr. 582). The examiner rated the plaintiff's ability as either "poor" or "fair" in most areas of mental functioning. (Tr. 576-577). The ALJ rejected the opinion of Dr. Patel in favor of that of Bennett, another examining mental health professional. (Tr. 17). The court finds no error.

Psychologists Jan Jacobson (Tr. 423-424) and Edward Stodola (Tr. 514-515) each opined that Hoskins would be "moderately" limited in his ability to complete a normal workday or workweek without interruption from psychologically-based symptoms and perform at a consistent pace without an unreasonable number and length of rest periods, interact appropriately with the general public, and respond appropriately to changes in the work setting. Stodola also indicated that the claimant would be "moderately" limited in working in coordination with others without being distracted by them. (Tr. 514). To the extent that these restrictions might be regarded as more severe than those found by the ALJ, the court notes that they were outweighed by the opinion of Bennett, an examining source. The administrative regulations provide that "generally, we give more weight to the opinion of a source who has examined you than to the opinion of a source who has not examined you." 20 C.F.R. § 404.1527(d)(1). Therefore, these reports do not support the plaintiff's disability claim.

Hoskins argues that the ALJ erred by failing to cite specific reasons why his testimony concerning his complaints was not credible. However, the court notes

that the ALJ actually noted a number of reasons for this determination.  Among the reasons cited by the ALJ were a June, 2004 CT scan of the head which revealed no acute intracranial abnormality (Tr. 16, 257), a CT scan of the cervical spine revealing no acute traumatic skeletal abnormality (Id.), Dr. Stewart's finding of no evidence of radiculopathy and finding of only "mildly" decreased range of motion of the left shoulder (Tr. 16, 430), and Dr. Stewart's findings of intact sensation at all levels and normal straight leg raising.  (Tr. 16, 429).  The ALJ also observed that despite the claimant's alleged kidney problems, the record reveals only modest medical treatment relating to this condition.  (Tr. 16, 327-401).  Therefore, the court must reject the plaintiff's argument.

The undersigned concludes that the administrative decision should be affirmed.  A separate judgment and order will be entered simultaneously consistent with this opinion.

This the 12th day of July, 2011.

Signed By:
*G. Wix Unthank*
United States Senior Judge